**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| FRONTIER AIRLINES HOLDINGS, INC., et al. | : | Case No. 08-11298 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | x | |

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11. U.S.C. §§ 330 AND 331**

**FIFTH INTERIM AND FINAL APPLICATION**

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") |
| Authorized to Provide Professional Services to: | The Statutory Committee of Unsecured Creditors of Frontier Airlines Holdings, Inc., et al. (the "Committee") |
| Date of Retention: | June 12, 2008 (nunc pro tunc to April 24, 2008) |

**Fifth Interim Period**

| | |
|---|---|
| Period for which Compensation is Sought: | August 1, 2009 through September 30, 2009 |
| Amount of Compensation Sought: | $ 300,000.00 Monthly Fees |
| Expense Reimbursement Sought: | $ 15,242.00 |

**Final Application Period**

| | |
|---|---|
| Period for which Compensation is Sought: | April 24, 2008 through September 30, 2009 |
| Amount of Compensation Sought: | $ 2,585,000.00 Monthly Fees |
| Expense Reimbursement Sought: | $ 112,886.40 |

This is both a(n): __X__ interim and __X__ final application.

Prior Applications:

| Date Filed/ Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|
| 8/22/08 [471] | Apr 24, 2008–Jul 31, 2008 | $485,000.00 | $62,949.62 | $485,000.00 | $52,949.62 |
| 12/30/08 [703] | Aug 1, 2008–Nov 31, 2008 | $600,000.00 | $24,382.50 | $600,000.00 | $24,382.50 |
| 5/10/09 [833] | Dec 1, 2008–Mar 31, 2009 | $600,000.00 | $ 9,542.66 | $600,000.00 | $ 9,542.66 |
| 6/1/09 [1047] | Apr 1, 2009–Jul 31, 2009 | $600,000.00 | $10,769.62 | $600,000.00 | $10,769.62 |

# COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours for Current Period | Total Hours from June 12, 2008[1] | Total Fees for Current Period | Total Fees from Petition Date |
|---|---|---|---|---|
| Business Due Diligence | 22.0 | 556.0 | | |
| Analysis of Debtors' Business Plan, Cash Flow, Operations, Assets and Liabilities | 42.0 | 964.0 | | |
| Reorganization Issues and Strategy | 135.0 | 588.0 | | |
| Recurring Analysis, Presentations & Administrative (e.g., Liquidity) | 34.0 | 1,819.0 | | |
| Hearings, Court Filings, Preparation and Testimony | 88.0 | 432.0 | | |
| Other Miscellaneous Activities (e.g., DIP) | 8.0 | 299.0 | | |
| **TOTAL** | **330.0** | **4,658.0** | **$600,000.00** | **$2,285,000.00** |

Note: Detailed time and expense records are not being filed but are being provided to the Debtors, the Court, the Office of the United States Trustee and the Statutory Committee of Unsecured Creditors. Parties-in-interest required to be served with monthly fee statements pursuant to the Interim Compensation Order have previously received such records. Copies of these records will be made available to other parties in interest upon request.

---

[1] Pursuant to its retention order, Houlihan Lokey is not required to maintain time records for the period prior to its retention date of June 12, 2008.

**FEE SUMMARY**

| Fee Statement Date | Fee Periods | Total Fees Requested | Total Expense Requested | Amount of Fees Paid | Amount of Expenses Paid | Amount of Holdback Sought | Holdback Received |
|---|---|---|---|---|---|---|---|
| 10/20/09 | August 2009 | $120,000 | $0.00 | $0.00 | $0.00 | $30,000 | $0.00 |
| 10/20/09 | September 2009 | $120,000 | $15,242 | $0.00 | $0.00 | $30,000 | $0.00 |

**EXPENSE SUMMARY**

| Expense Category | Total Expenses This Period 8/1/09-9/30/09 | Total Expenses Prior Periods 4/24/08-7/31/09 | Total Expenses Since Petition Date |
|---|---|---|---|
| Airfare | $10,026.30 | $64,722.68 | $74,748.98 |
| Ground Transportation | $621.95 | $5,978.77 | $6,600.72 |
| Parking | $0.00 | $449.00 | $449.00 |
| Lodging | $3,201.36 | $17,447.07 | $20,648.43 |
| Meals | $753.94 | $11,223.04 | $11,976.98 |
| Telephone | $568.15 | $3,584.83 | $4,152.98 |
| Delivery and Messenger | $70.30 | $245.61 | $315.91 |
| Research | $0.00 | $2,962.14 | $2,962.14 |
| Admin/Outside Legal Fees | | $1,031.25 | $1,031.25 |
| SUBTOTAL | $15,242.00 | $107,644.40 | $122,886.40 |
| Less: Voluntary Reduction | | ($10,000.00) | ($10,000.00) |
| TOTAL | $15,242.00 | $97,644.40 | $112,886.40 |

Houlihan Lokey's Retention Application and Engagement Agreement, as approved by the Court, pursuant to Sections 327(a), 328(a) and 1103(a) of Title 11 of the Bankruptcy Code, provides, among other things, for the payment of fees to Houlihan Lokey for services rendered during this bankruptcy case of $150,000 per month (the "Monthly Fee") plus reimbursement of out-of-pocket expenses incurred in connection with this engagement, subject to Court approval. As such, Houlihan Lokey respectfully requests (i) interim compensation in the amount of

$315,242 (consisting of $240,000 in Monthly Fees (representing 80% of the $150,000 per month), reimbursement of actual and necessary expenses in the amount of $15,242.00, and payment of $60,000 representing the applicable holdback fees for August and September 2009 (the "Fifth Interim Period")), of which $315,242 remains outstanding, (ii) final compensation for the period of April 24, 2008 through September 30, 2009 (the "Application Period") in the amount of $2,585,000.00, of which $300,000 remains outstanding and (iii) reimbursement of actual and necessary expenses for the Application Period of $112,886.40, of which, 15,242 remained outstanding as of this filing.

In Summary, services performed during the Fifth Interim Period on behalf of the Statutory Committee of Unsecured Creditors included, but was not limited to:

  a.  Analyzing business plans and forecasts of the Debtors;

  b.  Evaluating the assets and liabilities of the Debtors;

  c.  Assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' Chapter 11 plan(s) of reorganization or liquidation or any other Chapter 11 plan(s);

  d.  Analyzing and reviewing the financial and operating statements of the Debtors;

  e.  Providing such financial analyses as the Committee required in connection with the Cases;

  f.  Assisting in the determination of an appropriate capital structure for the Debtors;

  g.  Evaluating the Debtors' debt capacity in light of its projected cash flows;

  h.  Analyzing strategic alternatives available to the Debtors;

  i.  Assisting in the review of claims and with the reconciliation, estimation, settlement and litigation with respect thereto; and

  j.  Assisting the Committee in evaluating potential exit alternatives, including potential Chapter 11 structures.

HOULIHAN LOKEY respectfully requests that this Court enter an Order awarding Houlihan Lokey an interim allowance for the Fifth Interim Period, as defined herein, of compensation and expenses in the amount of $315,242.00, consisting of $300,000 in interim fees

(which includes the 20% Court Approved Holdback of $60,000), plus $15,242.00 in out-of-pocket expenses, of which $315,242.00 remains outstanding as of this filing.

| | |
|---|---|
| ***Professional Fees Requested (interim fees)*** | ***$300,000.00*** |
| ***Out-of-Pocket Expenses*** | ***$  15,242.00*** |
| ***Total Fifth Interim Period Fees and Expenses Requested*** | ***$315,242.00*** |
| ***Less: Amounts Received*** | ***$        0.00)*** |
| ***Total Fifth Interim Period Fees and Expenses Outstanding*** | ***$315,242.00*** |

**[INTENTIONALLY LEFT BLANK]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————— x
                                                 :

In re:                               :         Chapter 11

                                                   :

FRONTIER AIRLINES HOLDINGS, INC., et al.,   :        Case No. 08-11298 (RDD)

                                                   :

                         Debtors.       :         (Jointly Administered)

—————————————————————————— x

**FIFTH AND FINAL APPLICATION OF**
**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS**
**FINANCIAL ADVISOR TO THE STATUTORY COMMITTEEE**
**OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR**
**THE INTERIM PERIOD OF APRIL 24, 2008 THROUGH SEPTEMBER 30, 2009**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

       This Fifth and Final Application of Houlihan Lokey Howard & Zukin Capital Inc. ("Houlihan Lokey") as financial advisor to the Statutory Committee of Unsecured Creditors of Frontier Airlines Holdings, Inc. (the "Committee") [2], hereby applies for an Order under §§ 327(a) and 328(a) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014, 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for allowance of monthly compensation and reimbursement of actual and necessary expenses for services rendered from April 24, 2008 through September 30, 2009 (the "Application Period"), and respectfully represents:

---

[2] The Committee is comprised of the following entities: (i) Airbus North America Customer Services, Inc., and Airbus S.A.S.; (ii) AQR Capital; (iii) Credit Suisse Securities (USA) LLC; (iv) Frontier Airlines Pilots Associations; (v) Goodrich Corporation; (vi) Republic Airlines Inc.; and (vii) U.S. Bank, National Association. In addition, the following entities were appointed as ex officio members of the Committee: (i) City and County of Denver and (ii) International Brotherhood of Teamsters – Airline Division.

## Introduction

1.      By this Application, Houlihan Lokey requests an order of this Court allowing the amounts requested herein as compensation for professional services rendered as investment banker and financial advisor to the Committee during the Application Period.

## Background

2.      On April 10, 2008 (the "Petition Date"), Frontier Airlines Holdings, Inc. and its two subsidiaries that are debtors and debtors-in-possession in the above-caption Chapter 11 cases (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue in possession of its property and is operating and managing its businesses as a debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3.      On April 24, 2008, the United States Trustee for the Southern District of New York appointed the Committee, and on that date the Committee selected Houlihan Lokey to serve as their financial advisor and investment banker.  The Committee and Houlihan Lokey executed a letter agreement (the "Engagement Agreement") memorializing the terms of the Committee's engagement of Houlihan Lokey.  The Engagement Agreement between the Committee and Houlihan Lokey is attached hereto as Exhibit A.

4.      On or about May 2, 2008, the Court entered an Order To Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "Motion").

5.      On May 18, 2008, the Committee filed their Application Of The Statutory Committee Of Unsecured Creditors For Order Authorizing And Approving The Employment And Retention Of Houlihan Lokey Howard & Zukin Capital, Inc. As Financial Advisor, Nunc Pro Tunc To April 24, 2008 (the "Retention Application").

6.      On June 12, 2008, the Court signed an Order granting the Retention Application (the "Retention Order"), attached hereto as Exhibit B.

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 case and this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      Under the Engagement Agreement, Houlihan Lokey is authorized to render financial advisory and investment banking services including, among other things:

i.     Analyze business plans and forecasts of the Debtors;

ii.     Evaluate the assets and liabilities of the Debtors;

iii.     Assess the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' Chapter 11 plan(s) of reorganization or liquidation or any other Chapter 11 plan(s);

iv.     Analyze and review the financial and operating statements of the Debtors;

v.     Provide such financial analyses as the Committee may require in connection with the Cases;

vi.     Assist in the determination of an appropriate capital structure for the Debtors;

vii.     Evaluate the Debtors' debt capacity in light of its projected cash flows;

viii.     Assist with a review of the Debtors' employee benefit programs, including key employee retention, incentive, pension and other post-retirement benefit plans;

ix.     Analyze strategic alternatives available to the Debtors;

x.     Assist in the review of claims and with the reconciliation, estimation, settlement and litigation with respect thereto;

xi.     Assist the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any Chapter 11 plan(s) or otherwise;

xii.     Represent the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

xiii.     Provide testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

xiv.     Provide such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Committee.

## Relief Requested

By this Application, Houlihan Lokey requests allowance and approval of (i) interim compensation in the amount of $315,242 (consisting of $240,000 in Monthly Fees (representing 80% of the $150,000 per month), reimbursement of actual and necessary expenses in the amount of $15,242, and payment of $60,000 representing the applicable holdback fees for August and September 2009 (the "Fifth Interim Period"), of which $315,242 remains outstanding, (ii) final compensation for the period of April 24, 2008 through September 30, 2009 (the "Application Period") in the amount of $2,585,000, of which $300,000 remains outstanding and (iii)

reimbursement of actual and necessary expenses for the Application Period of $112,886.40, of which, $15,242 remained outstanding as of this filing. A summary of Houlihan Lokey's fees and expenses is attached hereto as Exhibit D.

9.   Houlihan Lokey has not received payment or promise of payment for services rendered in these cases other than pursuant to the Engagement Agreement and in accordance with the Motion.

10.   Pursuant to Houlihan Lokey's Engagement Agreement, Employment Application and this Court's Order, Houlihan Lokey is utilizing the services of Simat, Helliesen & Eichner, Inc. ("SH&E") as an industry consultant with no additional fees payable by the Debtors. However, reimbursement of actual reasonable and out-of-pocket expenses incurred by SH&E are acceptable.

11.   Out-of-pocket expenses incurred by Houlihan Lokey are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Houlihan Lokey does not factor general overhead expenses into disbursements charged to its clients in connection with Chapter 11 cases. Houlihan Lokey has followed internal policies with respect to out-of-pocket expenses billed as set forth below:

(a)   Houlihan Lokey's general policy permits its employees to bill meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints. Houlihan Lokey employees are permitted to order meals in the office if the employee is required to work after 7:00 p.m.

(b)   Messengers and couriers are used by Houlihan Lokey to deliver hard copy documents relating to the client matter that require receipt on an expedited basis; otherwise, Houlihan Lokey uses the regular postal system. Any charges for messengers and couriers are billed to a client at cost.

(c)   Research and other expenses include charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to Houlihan Lokey.

(d)   With respect to local travel, Houlihan Lokey's general policy enables employees to travel by private car service, taxi, or subway to and from meetings while rendering services to

a client on a client-related matter, for which the client is charged. Further, Houlihan Lokey employees are permitted to charge personal commuting expenses to a client as long as the employee is traveling after 8:00 p.m., primarily due to safety reasons.

## Professional Services Rendered During The Application Period

12.     The Committee selected Houlihan Lokey because of Houlihan Lokey's extensive knowledge, experience, and reputation in financial restructuring, and given its understanding and familiarity with the issues involved in this case, the Committee believes that Houlihan Lokey possesses the requisite resources and was well-qualified to represent the Committee in this case.

13.     The services that Houlihan Lokey is required to perform and has performed thus far have been substantial and necessary in these Chapter 11 cases. Houlihan Lokey attempted to perform such services with the minimum amount of duplication with any other party's advisors.

14.     Since Houlihan Lokey's retention by the Committee, Houlihan Lokey staffed the engagement consistent with the Committee's objectives and in a manner that provided for thorough and efficient representation of the interest of the Committee. Houlihan Lokey's activities in this case are being supervised on a day-to-day basis by Christopher R. Di Mauro, Managing Director. In addition, the following professionals are also providing services: Irwin N. Gold, Senior Managing Director, Jonathan B. Cleveland, Managing Director, Michael Krakovsky, Director, Todd E. Hanson, Vice President, Geoffrey Coutts, Associate, and Derek Hwang, Financial Analyst. Biographies of each professional who has provided service during the Application Period is attached hereto as Exhibit C.

15.     During the Application Period, Houlihan Lokey has worked extensively with legal counsel retained by the Committee, the Debtors, other parties in interest in the case, and the senior management of the Debtors. As further detailed in paragraph 17 below and as can be seen in Houlihan Lokey's detailed time records, Houlihan Lokey's work has covered a broad variety of financial and operational issues and other matters relevant to the Debtors' reorganization, ranging from financial analyses to presentation of relevant information to the Committee.

16.     As investment bankers, Houlihan Lokey does not ordinarily bill clients on an hourly basis for financial restructuring services and does not typically track the time spent by professionals on a specific engagement. However, as agreed with the Court, Houlihan Lokey has instructed the professionals working on this matter to keep summary time records from the date of the Retention Order (June 12, 2008) that approximate the time spent on the case by major

categories. Although these time records may not be reflective of an exhaustive list of all time spent by professionals of Houlihan Lokey on this matter, they do provide a summary of the critical involvement of Houlihan Lokey in these cases. We believe that all time entries and requested expenses are in substantial compliance with the Local Rules of this Court. A summary of the hours spent, the names of each professional rendering services to the Committee, and a summary of the scope of Houlihan Lokey's services are reflected in time records, which have been maintained by each of Houlihan Lokey's employees involved in this case (attached hereto as Exhibit E[3]).

17. In summary, during the Fifth Interim Period as well as during the Application Period, Houlihan Lokey has provided financial advisory services to the Committee in the following categories:

### A. Business Due Diligence

During the Application Period, Houlihan Lokey has conducted due diligence by attending meetings, both in person and via telephone, with the Committee, the Committee's legal advisors, the Debtors, and the Debtors' other financial and operational and legal advisors. Houlihan Lokey has participated in numerous meetings and on numerous telephone conferences with the Debtors to assist the Committee in analyzing the Debtors' operations, financial performance and other matters of importance throughout the Application Period. Additionally, Houlihan Lokey has provided to the Committee extensive information regarding the financial results, operating issues and general information regarding other matters important to the status of these cases.

### B. Analysis of Debtors' Business Plan, Cash Flow, Operations, Assets and Liabilities

Houlihan Lokey has been actively involved in the process of analyzing the Debtors' performance on its current business plan and budget and related issues. During the Application Period, Houlihan Lokey analyzed the Debtors' assets and operations. Specifically, Houlihan Lokey has:

---

[3] Detailed time and expense records are not being filed but are being provided to the Debtors, Debtors' counsel, the Court, and the U.S. Trustee. Parties in interest required to be served with monthly fee statements pursuant to the Interim Compensation Order have previously received such records. Copies of these records will be made available to other parties-in-interest upon request. The U.S. Trustee has been conferred with regarding this procedure.

i.     reviewed and analyzed the Debtors' ongoing financial performance;

ii.     analyzed the Debtors' business plan, including preliminary and final analyses of debt capacity and potential restructuring alternatives;

iii.     analyzed actual and projected weekly liquidity;

iv.     analyzed industry and economic trends affecting the Debtors' business on a historical and projected basis;

v.     analyzed the forecasted implications of certain contract rejections;

vi.     analyzed the implications of the Debtor's DIP financing on cash flows;

vii.     analyzed the operating results and forecasts of a number of the Debtors' comparable industry peers; and

viii.     conducted such other analysis as was deemed appropriate.

### C.     Reorganization Issues and Strategy

Houlihan Lokey has assisted the Committee in (i) evaluating their overall negotiating strategy, (ii) reviewing the conceptual underpinnings and financial implications of various legal strategies pursued by the Debtors, and (iii) assessing potential alternative strategies and courses of action. In addition, Houlihan Lokey has assisted the Committee through the preparation of both quantitative and qualitative analyses regarding the (i) financial and operational performance of the Debtors' assets and operations, (ii) due diligence regarding the Debtors' several iterations of its business plan, and (iii) advantages and disadvantages of various other actions proposed by the Debtors.

### D.     Recurring Analysis, Presentations & Administrative

Houlihan Lokey has analyzed and prepared presentations on such topics as the Debtors' liquidity and monthly operations. These items are completed on a recurring basis, when the necessary information becomes available. Administrative tasks are general in nature and typically do not represent a significant percentage of the hours of work performed. This category also includes calls related to the activities described above.

### E.     Hearings, Court Filings, Preparation and Testimony

Houlihan Lokey has reviewed, analyzed and/or prepared miscellaneous bankruptcy court filings relating to the Debtors' cases. Such filings include motions relevant to the interests of the Committee and may be reviewed by Houlihan Lokey in cooperation with the Committee's counsel.

## F.     Other Miscellaneous Activities

Houlihan Lokey has prepared other miscellaneous analyses and presentation materials deemed necessary for the Committee.

18.     Based on the above and in accordance with the Engagement Agreement, Houlihan Lokey respectfully requests (i) interim compensation in the amount of $315,242 (consisting of $240,000 in Monthly Fees (representing 80% of the $150,000 per month), reimbursement of actual and necessary expenses in the amount of $15,242.00, and payment of $60,000 representing the applicable holdback fees for August and September 2009 (the "Fifth Interim Period"), of which $315,242 remains outstanding, (ii) final compensation for the period of April 24, 2008 through September 30, 2009 (the "Application Period") in the amount of $2,585,000, of which $300,000 remains outstanding and (iii) reimbursement of actual and necessary expenses for the Application Period of $112,886.40, of which, $15,242 remained outstanding as of this filing.

## Disbursements

19.     As previously mentioned, attached hereto as Exhibit D is a summary of the out-of-pocket expenses incurred by Houlihan Lokey and SH&E during the Application Period in connection with its services on behalf of the Committee and for which it is requesting reimbursement by the Debtors at this time in the aggregate amount of $112,886.40. Of this amount, $15,242 remains unpaid.

20.     In accordance with the applicable factors enumerated in the Bankruptcy Code, it is respectfully submitted that the amount requested by Houlihan Lokey is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title. Moreover, Houlihan Lokey has reviewed the requirements of the Administrative Order and believes that this Application complies with that Order.

WHEREFORE, Houlihan Lokey requests the Court enter an Order, as set forth below and as indicated in the attached Affidavit of Christopher R. Di Mauro, an officer of the firm, allowing the compensation for financial advisory services rendered to the Committee during the Application Period in the amount of $240,000 in interim monthly fees; reimbursement of actual and necessary expenses in the amount of $15,242.00; and payment of $60,000 in total holdback fees, of which $370,374.92 remains outstanding as of this filing.

| | |
|---|---|
| *Professional Fees Requested (final fees)* | *$2,585,000.00* |
| *Out-of-Pocket Expenses* | *$   112,886.40* |
| *Total Application Period Fees/ Expenses* | *$2,697,886.40* |
| *Less: Amounts Received* | *($2,382,644.40)* |
| *Total Application Period Outstanding* | *$  315,242.00* |

Los Angeles, California
Dated: October 26, 2009

By: _____

                                Christopher R. Di Mauro
                                Managing Director
                Houlihan Lokey Howard & Zukin Capital, Inc.
                                1930 Century Park West
                                Los Angeles, CA  90067

                                                            .

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x
                                  :

In re:                              :         Chapter 11
                                    :

FRONTIER AIRLINES HOLDINGS, INC., et al.,   :         Case No. 08-11298 (RDD)
                                    :

                      Debtors.      :         (Jointly Administered)
————————————————————— x

## AFFIDAVIT PURSUANT TO SECTION 504
## OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016

Christopher R. Di Mauro, being duly sworn, deposes and says:

1.       I am a Managing Director of the firm of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), which maintains offices at, among other locations, 1930 Century Park West, Los Angeles, California 90067.

2.       This affidavit is submitted pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 in connection with and in support of the foregoing fee application (the "Application") for an allowance of interim and final compensation and reimbursement of expenses incurred for services rendered as financial advisor to The Statutory Committee of Unsecured Creditors of Frontier Airlines Holdings, Inc. et al., (the "Committee") for the period from April 24, 2008 through September 30, 2009, inclusive (the "Application Period"). The facts contained in the foregoing Application are true and correct to the best of my knowledge, information and belief.

3.       This Application respectfully requests that this Court enter an Order awarding Houlihan Lokey total final compensation of $2,697,886.40, consisting of (i) final fees of $2,585,000 (inclusive of holdback fees) and (ii) reimbursement of reasonable and necessary expenses of $112,886.40 for services rendered during this period of the engagement.

4.      No agreement or understanding exists between Houlihan Lokey and any other persons or parties to share in any compensation received in connection with this Case.

5.      The fees and disbursement requested in the Application are billed at rates in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients.

6.      Houlihan Lokey has at all times, to the extent practicable, minimized disbursements incurred in connection with its representation of the Official Committee. In providing a reimbursable service, Houlihan Lokey does not make a profit on that service.  In charging for a particular service, Houlihan Lokey does not include in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for service that is justifiably purchased or contracted for from a third party, Houlihan Lokey requests reimbursement only for the amount billed to Houlihan Lokey by the third-party vendor and paid by Houlihan Lokey to such vendor.

Dated: October 26, 2009.

_____
Christopher R. Di Mauro
Managing Director
Houlihan Lokey Howard & Zukin Capital, Inc.

# INDEX OF EXHIBITS

| EXHIBIT A | ENGAGEMENT AGREEMENT |
|-----------|----------------------|
| EXHIBIT B | RETENTION ORDER |
| EXHIBIT C | BIOGRAPHIES OF PROFESSIONALS |
| EXHIBIT D | FEES AND EXPENSE DETAIL |
| EXHIBIT E | TIME DETAIL |

# EXHIBIT A

## *ENGAGEMENT LETTER*



## HOULIHAN LOKEY
www.hl.com

*Confidential*

April 24, 2008

The Official Committee (the "Committee") of Unsecured Creditors
of **Frontier Airlines Holdings, Inc.**
and its affiliated debtors and debtors-in-possession
(the "Debtors") in care of the Chair of the Committee

R. Douglas Greco, Vice President
Airbus S.A.S.
Airbus North America
Customer Services, Inc.
c/o Airbus Americas, Inc.
198 Van Buren St., Ste 300
Herndon, VA 20170

Dear Mr. Greco:

      This letter agreement (this "Agreement") confirms the terms under which the Committee has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), to provide financial advisory and investment banking services to the Committee in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1.    **Services.** Pursuant to its engagement by the Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by the Committee:

    (i)    Analyzing business plans and forecasts of the Debtors;

    (ii)    Evaluating the assets and liabilities of the Debtors;

    (iii)    Assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' Chapter 11 plan(s) of reorganization or liquidation or any other Chapter 11 plan(s);

    (iv)    Analyzing and reviewing the financial and operating statements of the Debtors;

    (v)    Providing such financial analyses as the Committee may require in connection with the Cases;

    (vi)    Assisting in the determination of an appropriate capital structure for the Debtors;

    (vii)    Evaluating the Debtors' debt capacity in light of its projected cash flows;

    (viii)    Assisting with a review of the Debtors' employee benefit programs, including key employee retention, incentive, pension and other post-retirement benefit plans;

Los Angeles • 930 Century Park West • Los Angeles, California 90067 • tel.310.553.8871 • fax.310.553.2173
New York  Chicago  San Francisco  Washington, D.C.  Minneapolis  Dallas  Atlanta  London  Paris  Frankfurt  Hong Kong  Tokyo
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital. Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 2

- (ix) Analyzing strategic alternatives available to the Debtors;

- (x) Assisting in the review of claims and with the reconciliation, estimation, settlement and litigation with respect thereto;

- (xi) Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any Chapter 11 plan(s) or otherwise;

- (xii) Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

- (xiii) Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

- (xiv) Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Committee.

Houlihan Lokey agrees to utilize the services of Simat, Helliesen & Eichner, Inc. ("SH&E") as an industry consultant, and there shall be no additional fees payable under this Agreement associated with the retention of SH&E, provided, however, that the actual reasonable and documented out-of-pocket expenses incurred by SH&E (or any other consultant) shall be reimbursed by the Company pursuant to Section 6 hereunder.

2. **Committee Engagement**. Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder. Houlihan Lokey is providing its services as the financial advisor to the Committee and is not providing any services on behalf of the individual members of the Committee. To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, Houlihan Lokey and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue. At the direction of Committee Counsel, certain communication and correspondence between Houlihan Lokey, SH&E and the Committee, and work product and analyses prepared by Houlihan Lokey and SH&E for the Committee in connection with this matter, will be considered in preparation for litigation regarding the restructuring of the Debtors, and accordingly will be subject to the attorney-client privilege and work-product privilege between Houlihan Lokey, SH&E, Committee Counsel and the Committee.

3. **Fees and Expenses**. In consideration of Houlihan Lokey's acceptance of this engagement and performance of services pursuant to this Agreement, the Debtors shall pay the following:

- (i) *Monthly Fees*: Houlihan Lokey shall be paid in advance a nonrefundable monthly cash fee of $150,000 ("Monthly Fee"). The first payment shall be made upon the approval of this Agreement by the Bankruptcy Court and shall be pro rated in respect of the period as from the Effective Date through the end of that month in which the first payment is made. Thereafter, payment of the Monthly Fee shall be made on the first date of each subsequent month during the term of this Agreement, with the understanding that the last month's payment shall be pro-rated, as appropriate, based on the date of termination of this Agreement. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. 100% of the Monthly Fees received by Houlihan Lokey and approved by the final order of the Bankruptcy Court shall be credited against the

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 3

Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced below zero; and

(ii) *Deferred Fee*: In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey the following fee:

Houlihan Lokey shall be entitled to an additional fee (the "Deferred Fee") to be payable by the Debtors in an amount equal to 1.5% of the Total Consideration (as defined below), if any, received by the unsecured creditors in the Cases. The Deferred Fee shall be earned and payable on the earlier to occur of (a) the date of receipt of initial distributions by the unsecured creditors in the Cases, and (b) the effective date of a plan or plans of reorganization in the Cases (the "Plan"). The Deferred Fee shall be paid in cash and in no event shall exceed $6 million without giving effect to the Monthly Fee credits as described herein.

For purposes hereof, "Total Consideration" shall mean the total aggregate consideration paid by the Debtors on account of allowed unsecured claims against the Debtors pursuant to the Plan (including any amounts held in escrow or in claims reserves for distribution to unsecured creditors). Total Consideration shall include, without limitation: (a) cash; (b) notes, securities (including, but not limited to, debt and/or equity) or other property; (c) payments made in installments; (d) contingent payments (whether or not related to future earnings or operations); and (e) other interests or consideration. For purposes of computing any fees payable to Houlihan Lokey hereunder, non-cash consideration shall be valued as the greatest of: (I) if the value of such non-cash consideration is disclosed in a court approved disclosure statement in support of the Plan, the value of such non-cash consideration in such disclosure statement; (II) if such non-cash consideration includes publicly traded equity securities of a non-Debtor third party, the value of such securities shall be calculated based on the weighted average of the last sale or closing price for the ten trading days immediately prior to the effective date of the Plan; (III) if such non-cash consideration includes the reorganized stock of the Debtors and such securities are publicly traded on a listed exchange following the reorganization, then the value of such securities shall be calculated based on the weighted average of the last sale or closing price for the ten trading days immediately subsequent to the effective date of the Plan; (IV) if such non-cash consideration includes notes or debt securities, such notes or debt securities shall be valued at face value; or (V) if such non-cash consideration cannot be valued under clauses (I), (II), (III) or (IV), Houlihan Lokey will prepare a valuation of such non-cash consideration, and Houlihan Lokey, the Debtors and the Committee will mutually agree on a fair valuation thereof for the purposes of calculating the Deferred Fee.

4.  **Term and Termination**. In the event that (a) the Committee's application for employment of Houlihan Lokey under Sections 328(a) and 1103 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Houlihan Lokey in its sole discretion, this Agreement shall terminate immediately. Otherwise, this Agreement may be terminated at any time by either Houlihan Lokey or the Committee upon thirty days prior written notice to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive, and the Debtors' obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 4

In addition, notwithstanding the expiration or termination of this Agreement and provided Houlihan Lokey has not resigned, or caused the termination of this Agreement due to unacceptability of the form of order approving this Agreement. Houlihan Lokey shall be entitled to full payment (net of any credits as provided herein) by the Debtors of the Deferred Fee described in this Agreement so long as the conditions set forth in Section 3(ii) hereunder causing such Deferred Fee to be due and payable are satisfied during the term of this Agreement or within 12 months after the date of expiration or termination of this Agreement.

5.      **Reasonableness of Fees**.  The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the firm.  Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the firm.  Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Debtors and the Committee.

6.      **Expenses**.  In addition to all of the other fees and expenses described in this Agreement, the Debtors shall reimburse Houlihan Lokey for the actual reasonable and documented out-of-pocket expenses incurred by Houlihan Lokey and SH&E from time to time in connection with their services hereunder.  Houlihan Lokey bills its clients for its actual reasonable and (except for the expenses described in subsection (ii) of the immediately following sentence) documented out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis, and (ii) research, database and similar information charges paid to third-party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey. Houlihan Lokey will, to the extent practicable, fly on Frontier when traveling to Denver on all matters related to the Cases, and, in any event, will not seek reimbursement for air travel in excess of amounts equal to applicable full fare coach class fares.

Houlihan Lokey shall, in addition, be reimbursed by the Debtors for the reasonable fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Agreement and the matters contemplated hereby, (ii) Houlihan Lokey's employment as a professional person in the Cases and (iii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including, without limitation, in connection with fee disputes and objections to Houlihan Lokey's fees by any party in the Cases, unless it is judicially determined that Houlihan Lokey sought fees to which it was not entitled.

7.      **Invoicing and Payment**.  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Debtors shall provide contemporaneous written notice of each such payment to Houlihan Lokey.

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 5

8.    **Information**.  The Committee shall use all reasonable efforts to cause the Debtors (i) to provide Houlihan Lokey with access to management and other representatives of the Debtors, as reasonably requested by Houlihan Lokey and (ii) to furnish all data, material and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Debtors that Houlihan Lokey reasonably requests in connection with the services to be performed for the Committee hereunder.  Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Debtors or the Committee or otherwise reviewed by Houlihan Lokey.  The Committee understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein.  The Committee acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any real property or fixed assets or liabilities of the Debtors.  Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey.

9.    **Limitations on Services as Advisor**.  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by Houlihan Lokey and the Committee.  Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational administrative, cash management, or similar activities.  Houlihan Lokey is providing the Committee with Houlihan Lokey's services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between Houlihan Lokey, on the one hand, and the Committee or any other person, on the other hand.  Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Committee in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose.  In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Committee's or the Debtors' decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any transaction(s).

10.    **Bankruptcy Court Approval**.  The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 328(a) and 1103 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and Houlihan Lokey's employment hereunder shall not be subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Deferred Fee is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.  The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of their filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion.  If the order authorizing the employment of Houlihan Lokey is obtained, the Debtors shall pay all fees and expenses due pursuant to this Agreement, as promptly as

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 6

possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

11. **Credit**. Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Debtors' logo or other identifying marks) describing its services in connection with this engagement.

12. **Choice of Law; Jury Trial Waiver; Jurisdiction**. **THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. EACH OF HOULIHAN LOKEY AND THE COMMITTEE IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.**

13. **Indemnification and Standard of Care**. As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services to the Committee under this Agreement, the Debtors shall (i) indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors (including, but not limited to, SH&E), subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any transaction or any actions taken or omitted to be taken by an Indemnified Party, the Committee, any member of the Committee or the Debtors in connection with this Agreement and (ii) reimburse each Indemnified Party for all reasonable expenses (including without limitation the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including without limitation any shareholder or derivative action), arising out of or relating to the formulation of any plan of reorganization for the Debtors, this Agreement, or such engagement, transaction or actions (each an "Action"). However, the Debtors shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, gross negligence, or intentional fraud of such Indemnified Party and in such case, the Debtors shall be entitled to recover from the applicable Indemnified Party any expenses advanced by the Debtors to such Indemnified Party hereunder to the extent attributable to such loss, claim, damage or liability, subject to such Indemnified Party's right of contribution.

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 7

If for any reason (other than as a result of the willful misconduct or intentional fraud of such Indemnified Party as set forth in the immediately preceding sentence) the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Debtors shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and Debtors, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Debtors pursuant to this Agreement. Relative benefits to the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Debtors, and its security holders, creditors (including members of the Committee), and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement, bears to (ii) the fees received by Houlihan Lokey under this Agreement. None of Houlihan Lokey, the Committee nor the Debtors shall, without the written consent of the others, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains economic terms and a release of the Indemnified Parties, the Committee and the Debtors reasonably satisfactory in form and substance to Houlihan Lokey, the Committee and the Debtors. The Debtors shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any Action, unless such settlement or compromise is consented to in writing by the Debtors, which consent shall not be unreasonably withheld.

If an Indemnified Party receives notice of the commencement of any Action, such Indemnified Party shall promptly notify the Debtors in writing of such Action, provided that failure to notify the Debtors shall not relieve the Debtors from any liability hereunder (a) if any of the Debtors had actual notice of such Action or (b) unless and only to the extent of any material prejudice to the Debtors resulting therefrom, and will not otherwise relieve the Debtors of any obligation or liability that the Debtors may have to any Indemnified Party otherwise than on account of the indemnity obligation hereunder. If an Indemnified Party is entitled to indemnification hereunder in connection with an Action, the Debtors may, in actions or proceedings other than those brought by any of the Debtors, upon notice to such Indemnified Party, assume the defense thereof, by retaining U.S.–based counsel reasonably satisfactory to such Indemnified Party and paying the fees and expenses of such counsel. Any Indemnified Party shall have the right to employ separate counsel in any Action and to participate in the defense thereof, but the fees and expenses of such counsel incurred after receipt of such notice from the Debtors shall be at the expense of such Indemnified Party unless (x) any of the Debtors have agreed in writing to pay the fees and expenses incurred by or on behalf of such Indemnified Party, (y) the Debtors shall have failed to timely assume the defense of such Action or retain counsel reasonably satisfactory to such Indemnified Party, or (z) the targets of or named parties to any such Action (including any impleaded parties) include any of the

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 8

Debtors and such Indemnified Party shall have been advised by counsel that (i) there are legal defenses available to such Indemnified Party that are different from or additional to those available to the Debtors or (ii) the representation of such parties by the same counsel would be inappropriate due to an actual or potential conflict of interest (in which case, if counsel to such Indemnified Party notifies any of the Debtors in writing that such Indemnified Party elects to retain separate counsel, (A) the Debtors shall not have the right to assume the defense of such action or proceeding on behalf of such Indemnified Party and (B) such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Debtors will pay the reasonable fees and expenses of such counsel (in addition to local counsel)). Notwithstanding anything else to the contrary herein, the Debtors shall in no event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any single Action; provided that in any such Action in which different Indemnified Parties have retained separate counsel, the Debtors shall be responsible for paying the fees and expenses of the single counsel as designated by Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Committee, the Debtors or any person or entity asserting claims related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any transaction, or any actions taken or omitted to be taken by an Indemnified Party, the Debtors or the Committee in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Committee and/or the Debtors which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, gross negligence, or intentional fraud of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to any other person or entity. The indemnity, reimbursement, and other obligations and agreements of the Committee and the Debtors set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

14. **Miscellaneous**. This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Cases. If appropriate, in connection with performing its services for the Committee hereunder Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Committee, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Houlihan Lokey and the Chair or other authorized representative of the Committee and approved by the Bankruptcy Court.

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 9

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Committee has all requisite power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Committee understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Committee confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

R. Douglas Greco,
Chair of The Official Committee of Unsecured Creditors
of Frontier Airlines Holdings, Inc., et al.
As of April 24, 2008
Page 10

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward
to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**

By: _____

Christopher R. Di Mauro
Managing Director

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF FRONTIER AIRLINES HOLDINGS, INC.**

By: **Airbus Americas, Inc., Chair of the Committee**

By: _____

R. Douglas Greco
Vice President

**EXHIBIT B**

*RETENTION ORDER*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
                                            :
In re:                                      :
                                            :   Chapter 11
FRONTIER AIRLINES HOLDINGS, INC., et al.,   :
                                            :   Case No. 08-11298 (RDD)
        Debtors.                            :
                                            :
                                            :
------------------------------------------------------------ x
```

## ORDER AUTHORIZING THE STATUTORY COMMITTEE OF UNSECURED CREDITORS OF FRONTIER AIRLINES HOLDINGS, INC., *ET AL.* TO RETAIN HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISOR, NUNC PRO TUNC TO APRIL 24, 2008

Upon the application dated May 16, 2008 (the "Application") of the Statutory Committee

of Unsecured Creditors of Frontier Airlines Holdings, Inc. *et al.* (the "Committee") of the above-

captioned debtors and debtors in possession (the "Debtors") for an order, pursuant to sections

327, 328, and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

Committee to retain and employ Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan

Lokey") as financial advisor to the Committee, *nunc pro tunc* to April 24, 2008 (the

"Application"), and upon the engagement letter dated April 24, 2008 (the "Engagement Letter")

and the declaration of Christopher R. Di Mauro (the "Di Mauro Declaration") and the affidavit of

David H. Treitel (the "Treitel Affidavit"); and the Court finding, based on the representations

made in the Application and the Di Mauro Declaration, that each of Houlihan Lokey and SH&E

is a "disinterested person" pursuant to section 101(14); that Houlihan Lokey's employment is

necessary and would be in the best interest of the Committee and the Debtors' estates; and

finding that adequate notice of the Application having been given; and it appearing that no other notice need be given; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1.      The Application shall be, and hereby is, GRANTED as provided herein.

2.      Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

3.      The Committee is authorized to retain and employ Houlihan Lokey as financial advisor at the expense of these Chapter 11 estates, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014, 2016 and 5002 and the terms set forth in the Application, *nunc pro tunc* to April 24, 2008.

4.      Houlihan Lokey's fees and expenses shall be paid in the amounts, at the times and in the manner described in the Engagement Letter and the terms of this Order.

5.      Houlihan Lokey shall keep its time records in one-hour increments in connection with the services to be rendered pursuant to the Engagement Letter; provided, however, that Houlihan Lokey shall be excused from maintaining time records for the period from April 24, 2008 until the date of this Order.

6.      The fees and expenses to be paid to Houlihan Lokey pursuant to the terms of the Engagement Letter shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to the standard of review under section 330 of the Bankruptcy Code; provided, however, that the Office of the United States Trustee shall retain the right to object to any interim or final fee application filed by Houlihan Lokey (including any request for the reimbursement of expenses) on any ground provided for under the Bankruptcy Code

(including, without limitation, sections 327, 328, 330 and 331 thereof), the Bankruptcy Rules, or any Local Rules or Order of this Court.

7.      The Debtors shall indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors (including, but not limited to, SH&E), subcontractors and controlling persons (collectively, the "Indemnified Parties"), pursuant to the Engagement Letter and subject to the following conditions:

a.      all requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the Engagement Letter shall be made by means of an interim and final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court, and is reasonable based upon the circumstances of the litigation or settlement in respect of which the indemnity is sought, provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution in the case of bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person; and

b.      in no even shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification if the Debtors, their estates, or the Committee asserts a claim for, and the Court determines by final order that such claim arose out of, bad faith, self dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person, and

c.      in the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors, the invoices and supporting time records from such attorneys shall be

annexed to Houlihan Lokey's own interim and final fee applications, and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code.

Dated:  June 12, 2008
    New York, New York

/s/**Robert D. Drain**
**THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE**

**EXHIBIT C**

*BIOGRAPHIES OF PROFESSIONALS*

**Irwin Gold**

Mr. Gold is a Senior Managing Director in Houlihan Lokey's Los Angeles and New York offices and the Co-Chairman of Houlihan Lokey's Board of Directors. He is also the global co-head of the firm's Financial Restructuring Group, which he co-founded in 1988. He has led many of the Group's largest, most complex financial restructuring engagements, both in bankruptcy and out-of-court. He has testified on numerous occasions as an expert witness on restructuring matters, has spoken publicly on a variety of financial restructuring topics and is the author of Valuation of the Restructured Enterprise and Its Effect on Negotiating Leverage.  In addition to various restructuring advisory roles involving airlines, Mr. Gold managed Houlihan Lokey's engagement as financial advisor to the official committee of unsecured creditors of Delta Air Lines.

Before joining Houlihan Lokey, Mr. Gold was a principal of the Seneca Group, an investment banking and financial advisory firm. From 1985 to 1986, he was the vice president and director of corporate finance for Wood Bros. Homes, a Denver-based real estate and mortgage banking company, where he helped negotiate a workout and sale of the company. From 1982 through 1985, he was associated with the corporate department of Gibson Dunn & Crutcher.
Mr. Gold holds a J.D. from the University of Virginia School of Law and a B.A. in economics, summa cum laude and Phi Beta Kappa, from Duke University. He is registered with FINRA (formerly the NASD) as a General Securities Principal (Series 7, 24 and 63).

**Christopher R. Di Mauro**

Mr. Di Mauro is a Managing Director in the Financial Restructuring Group in the Los Angeles office of Houlihan Lokey.  Mr. Di Mauro has led a number of financial restructuring and M&A engagements at Houlihan Lokey, across a variety of industries.  Notable transactions that Mr. Di Mauro has led while at Houlihan Lokey include the restructurings of Southern California Edison, Carmike Cinemas, Huntsman Chemicals, Williams Communications, Asia Global Crossing, Adelphia Business Solutions, and SpectraSite Communications.  Mr. Di Mauro is a frequent speaker and author on restructurings and distressed investing, including Investing in Distressed Securities: An Overview of an Expanding Asset Class (Strategic Research Institute, West Coast Distressed Conference, September 2001), Buying & Selling the Troubled Company (2001 Seminar Series), and Financial Restructuring Issues (2001 and 2002 Seminar Series).  Mr. Di Mauro has been identified on several occasions by TheDeal as one of the five most active restructuring investment bankers in the country.  He has extensive experience advising major constituencies in airline restructuring engagements, including advising (i) the Class A holders of Atlas Air's EETCs in its restructuring and (ii) the Class A holders of Northwest Airlines' EETCs in its restructuring.

Prior to re-joining Houlihan Lokey, Mr. Di Mauro was a senior high yield analyst with the High Yield Group of SunAmerica Investments, where he maintained primary responsibility for a $900 million portfolio of high yield, mezzanine and equity investments.  Mr. Di Mauro was also an associate with the Financial Restructuring Group of Houlihan Lokey from 1997 to 1998.  In addition, Mr. Di Mauro was an attorney in the corporate department of O'Melveny & Myers LLP, where he participated in numerous mergers and acquisitions and advised both companies

and underwriters in several issuances of debt and equity.  Mr. Di Mauro began his career as a loan officer with the Large Corporate Group of First National Bank of Boston.  Mr. Di Mauro holds a B.A. from Dartmouth College and a J.D. from the University of Southern California, where he was a member of the Order of the Coif, a staff member of the Southern California Law Review, and a Legion Lex Scholarship recipient.  Mr. Di Mauro is licensed with the NASD as a General Securities Registered Representative (Series 7, 63).


## Jonathan B. Cleveland

Mr. Cleveland is a Managing Director in Houlihan Lokey's Minneapolis office.  His many financial restructuring engagements have included representing debtors and creditors in out-of-court restructurings and bankruptcies.  He has extensive experience advising major constituencies in airline restructuring engagements, including advising (i) both the secured lender and a potential equity investor in the second bankruptcy of US Airways, (ii) Atlas Air in the sale of its cargo business to DHL, and (iii) the official committee of unsecured creditors in the restructuring of Delta Air Lines.

Before re-joining Houlihan Lokey in 1997, Mr. Cleveland was an associate in the Chicago law firm of Mayer, Brown & Platt, where he practiced corporate and securities law and was involved in numerous public securities offerings, public tender offers and private repurchase offers for debt and equity securities, and domestic and international acquisitions.  From 1990 to 1992, he was a member of Houlihan Lokey's Financial Restructuring Group.

Mr. Cleveland received a B.S. in finance and business economics from the University of Southern California.  He earned a J.D. magna cum laude from the University of Minnesota Law School, where he was a member of the Order of the Coif.  He is also licensed with FINRA (formerly the NASD) as a General Securities Representative (Series 7 and 63).


## Michael Krakovsky

Mr. Krakovsky is a Director in the Financial Restructuring Group in the Los Angeles office of Houlihan Lokey.  Since initially joining Houlihan Lokey in 2001, Mr. Krakovsky has focused on distressed companies as both an investment banker and a principal investor.  At Houlihan Lokey, Mr. Krakovsky has advised debtors and creditors on a range of in-court and out-of-court restructuring transactions. Notable transactions include Eagle Picher, TelCove (f/k/a Adelphia Business Solutions), Horizon PCS, SonicBlue, and Coeur d'Alene Mines Corp.

Prior to re-joining Houlihan Lokey in 2008, Mr. Krakovsky was a Managing Director at Levine Leichtman Capital Partner's Deep Value distressed debt fund.  In this capacity, Mr. Krakovsky sourced and analyzed distressed debt opportunities, and managed the fund's investment portfolio.

Prior to initially joining Houlihan Lokey in 2001, Mr. Krakovsky was an investment banker with Lazard, where he advised technology companies on a range of corporate finance transactions.  Mr. Krakovsky began his career as a transactional attorney with Irell & Manella.  Mr. Krakovsky

holds a B.S.E.E. (Electrical Engineering) from the University of Michigan, and a J.D. from Columbia Law School.


### Todd E. Hanson

Mr. Hanson is a Vice President in the Financial Restructuring Group in the Los Angeles office of Houlihan Lokey.  Prior to joining Houlihan Lokey, Mr. Hanson was an associate attorney with the Transactions Group of O'Melveny & Myers LLP, specializing in mergers and acquisitions and real estate transactions.  He was also a Corporate Finance attorney within the M&A Group at Dorsey & Whitney LLP.  Mr. Hanson holds a B.A., with highest distinction, in economics and business administration from the University of Minnesota – Morris, a J.D. magna cum laude from the University of Minnesota Law School, and an M.B.A. from Northwestern University's Kellogg School of Management.  He is registered with FINRA (formerly the NASD) as a General Securities Representative (Series 7 and 63).


### Geoffrey Coutts

Mr. Coutts is an Associate in the Financial Restructuring Group in Houlihan Lokey's Los Angeles office.  Prior to joining Houlihan Lokey, Mr. Coutts worked as a senior auditor at Ernst & Young in Palo Alto, CA.  Mr. Coutts graduated highest honors with a B.S. in business administration from the Haas School of Business at the University of California at Berkeley and holds an M.B.A. from Northwestern University's Kellogg School of Management. Mr. Coutts is also a Certified Public Accountant licensed in California. He is registered with FINRA (formerly the NASD) as a General Securities Representative (Series 7 and 63).


### Derek Hwang

Mr. Hwang is a Financial Analyst in Houlihan Lokey's Los Angeles office, where he is a member of the Financial Restructuring Group.  Before joining Houlihan Lokey, Mr. Hwang worked as a summer analyst at UBS Investment Bank.  Mr. Hwang holds a B.S. in economics with concentrations in finance and operations and information management from the Wharton School at the University of Pennsylvania.  He is registered with FINRA (formerly the NASD) as a General Securities Representative (Series 7 and 63).

# EXHIBIT D

## *FEE AND EXPENSE DETAIL*

| Inv # | Inv Date | Period | Gross Fees[*] | Offset/Holdback | Expenses | Total |
|-------|----------|--------|-----------|-----------------|----------|-------|
| **1st Interim Period** | | | | | | |
| 11733 | 8/11/08 | 4/24/08-4/30/08 | 35,000.00 | (7,000.00) | - | 35,000.00 |
| 11733 | 8/11/08 | May-08 | 150,000.00 | (30,000.00) | - | 150,000.00 |
| 11733 | 8/11/08 | Jun-08 | 150,000.00 | (30,000.00) | - | 150,000.00 |
| 11733 | 8/11/08 | Jul-08 | 150,000.00 | (30,000.00) | 62,949.62 | 212,949.62 |
| | | Voluntary Exp Reduction | | | (10,000.00) [**] | (10,000.00) |
| **2nd Interim Period** | | | | | | |
| 11965 | 9/30/08 | Aug-08 | 150,000.00 | (30,000.00) | 1,670.84 | 151,670.84 |
| 12068 | 10/30/08 | Sep-08 | 150,000.00 | (30,000.00) | 13,542.77 | 163,542.77 |
| 12290 | 11/18/08 | Oct-08 | 150,000.00 | (30,000.00) | 1,156.34 | 151,156.34 |
| 12376 | 12/16/08 | Nov-08 | 150,000.00 | (30,000.00) | 8,012.55 | 158,012.55 |
| **3rd Interim Period** | | | | | | |
| 12544 | 1/15/09 | Dec '08 | 150,000.00 | (30,000.00) | 501.15 | 150,501.15 |
| 12747 | 2/26/09 | Jan-09 | 150,000.00 | (30,000.00) | 8,673.91 | 158,673.91 |
| 12869 | 3/18/09 | Feb-09 | 150,000.00 | (30,000.00) | 165.64 | 150,165.64 |
| 12983 | 4/15/09 | Mar-09 | 150,000.00 | (30,000.00) | 201.96 | 150,201.96 |
| **4th Interim Period** | | | | | | |
| 13386 | 7/7/09 | Apr-09 | 150,000.00 | (30,000.00) | 394.70 | 150,394.70 |
| 13386 | 7/7/09 | May-09 | 150,000.00 | (30,000.00) | - | 150,000.00 |
| 13463 | 8/15/09 | Jun-09 | 150,000.00 | (30,000.00) | 10,374.92 | 160,374.92 |
| 13463 | 8/15/09 | Jul-09 | 150,000.00 | (30,000.00) | - | 150,000.00 |
| **5th Interim Period** | | | | | | |
| 13688 | 10/20/09 | Aug-09 | 150,000.00 | (30,000.00) | - | 150,000.00 |
| 13688 | 10/20/09 | Sep-09 | 150,000.00 | (30,000.00) | 15,242.00 | 165,242.00 |
| | | **Total** | **2,585,000.00** | **(517,000.00)** | **112,886.40** | **2,697,886.40** |

# EXHIBIT E

## *TIME DETAIL[4]*

---

[4] Detailed time and expense records are not being filed but are being provided to the Debtors, Debtors' counsel, the Court, and the U.S. Trustee.  Parties in interest required to be served with monthly fee statements pursuant to the Interim Compensation Order have previously received such records.  Copies of these records will be made available to other parties-in-interest upon request.  The U.S. Trustee has been conferred with regarding this procedure.
.